In the Matter of the Application of the MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, Respondent, Relative to Acquiring Title to Lands for the Purpose of Opening Van Cortlandt Avenue.

JULIA E. CAMERON, Appellant.

1. NEW YORK (CITY OF) — TAKING OF LANDS OWNED BY CITY, FOR WATER PIPE LINES, FOR STREET PURPOSES. Where the board of street opening and improvement of the city of New York, acting under the authority of section 970 of the charter, adopted a resolution requesting the counsel to the corporation to acquire title "wherever the same has not been heretofore acquired for the use of the public to the lands, tene-

ments and hereditaments that shall or may be required for the purpose of opening and extending Van Cortlandt Avenue" between points therein named, and directed "That the entire costs and expense of such proceedings shall be assessed upon the property deemed to be benefited thereby," the commissioners of estimate and apportionment, duly appointed to ascertain and determine the compensation to be made to the respective owners of the land to be taken, and to assess the cost of the improvement upon the persons and property deemed to be benefited thereby, as provided by section 980 of the charter, are justified in including in their award of damages an amount allowed to the city of New York for the loss and damage sustained by it by the opening and extension of said avenue over certain parcels of land previously acquired and purchased by the city in fee simple absolute for the purpose of laying and maintaining thereunder water pipe lines for the city water supply, said parcels of land having been paid for from the proceeds of bonds issued for that purpose and payable by general taxation.

2. SAME — WHEN CITY ENTITLED TO COMPENSATION FOR LANDS SO TAKEN.  The lands belonging to the city for its water pipe lines and taken under the resolution opening and extending Van Cortlandt avenue, were never acquired for street purposes, but the language of that resolution has special reference to the opening and extension of that avenue, and should be construed not only with reference to that purpose but also with reference to section 995 of the charter providing that when any property belonging to the city of New York be required for the opening or extension of streets or shall be benefited thereby " the city shall be entitled to compensation and recompense for the loss and damage it may sustain, and shall be bound to allow and pay for the benefit and advantage it may be deemed tó acquire thereby, in like manner as other owners and proprietors of lands and premises required for the purpose of making the said  *  *  *  improvement, or deemed to be benefited thereby; " and so construed it must be held that it was not the intention of the board of street opening and improvement, by their resolution, to except from the lands to be acquired that part thereof that had already been acquired by the city for the purposes of the water supply.

3. SAME — DEDICATION OF LANDS OWNED BY THE CITY, FOR OTHER PURPOSES, FOR STREET IMPROVEMENTS — PURPOSE AND EFFECT OF SECTION 995 OF THE CITY CHARTER.  Where real property has been acquired by the city of New York for general corporate purposes and paid for by general tax, the taking thereof for street purposes, by which the owners of abutting lands are benefited to the extent of the cost of the improvement, would result in a benefit to the abutting owners at the expense of the general taxpayer unless compensation could be allowed to the city for its lands so taken, since the proceeding, so far as the city is concerned as the owner in fee of the lands in question, results in a dedication of such lands for street purposes, and section 995 of the city charter was enacted for the express purpose of adjusting the rights and equities between

abutting owners and the general taxpayer so that the city should receive compensation for its loss and damage in such cases "in like manner as other owners and proprietors of lands and premises required for the purpose of making the said * * * improvement."

*Matter of Mayor, etc., of New York,* 114 App. Div. 904, affirmed.

(Argued October 2, 1906; decided October 16, 1906.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered June 20, 1906, which affirmed an order of Special Term confirming the report of commissioners of estimate and assessment in the above-entitled proceeding.

The facts, so far as material, are stated in the opinion.

*John C. Shaw* and *Joseph S. Frank* for appellant. By the terms of its resolution, the board of street opening and improvement directed that no award should be made for damage parcels 1, 1A, 1B, 10 and 10A, and that the assessment should be limited to the cost and expense of the acquisition of the damage parcels other than those just specified. The city is absolutely bound by this resolution, which is the fundamental basis of the proceeding. (*Matter of City of Buffalo,* 78 N. Y. 362.) The commissioners cannot question their own jurisdiction and are bound by the order appointing them. They should, therefore, have excluded the damage parcels owned by the city from their consideration, and should have made no assessment of the unauthorized awards for those parcels. (*Matter of Grand Boulevard,* 33 App. Div. 210.) There was no evidence of loss or damage to the city, and the halving of the fee value, which was the preliminary award, indicates that the commissioners did not base their final award upon any just estimate of loss and damage. (*Matter of Foster Ave.,* 89 App. Div. 490; *Park Comrs.* v. *Armstrong,* 45 N. Y. 234; *Lahr* v. *Met. El. R. R. Co.,* 104 N. Y. 268; *Whitney* v. *State,* 96 N. Y. 240; *Eldredge* v. *City of Binghamton,* 120 N. Y. 309.)

*John J. Delany, Corporation Counsel* (*Theodore Connoly, John P. Dunn* and *Thomas C. Blake* of counsel), for

respondent. The commissioners were obliged to make awards to the city for the lands in question. (*Matter of Grand Boulevard*, 33 App. Div. 212.) Neither the resolution of the board of street opening and improvement nor the title of the proceeding require that no compensation should be made for the city's interest in the property required for this improvement. (*Village of Olean* v. *Steyner*, 135 N. Y. 341.) Unless compensation is made for the partial interest which is required in this proceeding for the use made of the water supply property for highway purposes, property belonging to the taxpayers at large will be converted to the use of the few owners benefited without compensation. (L. 1901, ch. 466, §§ 970, 980, 1003.) Section 995 of the Greater New York charter expressly authorizes commissioners of estimate and assessment to make awards to the city of New York for its lands formerly condemned for the water supply line but now required for this improvement. (*Matter of Cooper*, 93 N. Y. 507; *Matter of Ninth Avenue*, 45 N. Y. 729; *Matter of City of Buffalo*, 68 N. Y. 172.)

Chase, J. The only question involved in this appeal is stated in a stipulation signed by the parties as follows: "Is it proper for the commissioners to make awards to the city of New York for damage to parcels Nos. 1, 1A, 1B, 10 and 10A in this proceeding?"

By chapter 445 of the Laws of 1877 the commissioner of public works in the city of New York was authorized to acquire real estate as therein defined for maintaining, preserving and increasing the supply of pure and wholesome water for the use of said city. Pursuant to that act, the city acquired the title in fee to certain real property under which was laid what is known as the Bronx river water supply pipe line. The real property so taken by the city was paid for from the proceeds of bonds issued by the comptroller of the city and payable by general taxation pursuant to the terms of said act. On the 15th day of May, 1896, the board of street opening and improvement of said city adopted a resolution requesting

the counsel to the corporation to acquire title "wherever the same has not been heretofore acquired for the use of the public to the lands, tenements and hereditaments that shall or may be required for the purpose of opening and extending Van Cortlandt Avenue" between points therein named. And it was by it further resolved : "That the entire costs and expense of such proceedings shall be assessed upon the property deemed to be benefited thereby." A petition for the appointment of commissioners of estimate and assessment was thereupon made in which it is recited that the board of street opening and improvement deem it necessary, useful and proper for public interest and convenience to acquire all the lands and premises therein particularly described for the opening and extension of said avenue, and an order was entered by the court May 7th, 1897 (after the Greater New York charter became a law), appointing commissioners of estimate and assessment accordingly. Included in the lands which are stated to be required for the opening and extension of Van Cortlandt avenue, and in the specific descriptions contained in said petition and order, are the parcels Nos. 1, 1A, 1B, 10 and 10A mentioned in the stipulation and other lands owned by individuals. The commissioners of estimate and assessment included in their award for damages an amount to the city of New York for its loss and damage sustained by the opening and extension of said avenue over said parcels of land, and such award to the city of New York was included in the estimate for assessment upon the property deemed by them to be benefited by the opening and extension of said avenue. The court confirmed the report of said commissioners, and the appellant, being one of the persons assessed for a portion of the value of the benefit and advantage of the said improvement, appealed to the Appellate Division, where the order of the Special Term, confirming the report of the commissioners, was unanimously affirmed, and from such order of affirmance the appeal is taken to this court.

Real property is purchased and acquired by municipalities for different purposes; it is held in fee or otherwise depend-

ent in part upon the authority by which it is purchased or acquired. The consideration for real property so purchased or acquired for certain purposes is paid by taxes levied upon all the taxable property within the municipality, and for certain other purposes by special assessment levied upon the property of individuals and corporations specially and peculiarly benefited by the improvement which requires the acquisition of such real property. The lands of the city of New York in question were acquired in fee simple absolute, and the bonds given to raise the money to pay therefor, if still unpaid, are a general charge against the city. It is expressly provided by section 970 of the said charter that the city of New York is authorized to acquire title for the use of the public to all or any of the lands required for street and other purposes therein named, and that compensation and recompense shall be made " to the parties and persons, if any such there shall be, to whom the loss and damage thereby shall be deemed to exceed the benefit and advantage thereof for the excess of the damage over and above the value of said benefit," and that the commissioners of estimate and assessment appointed to ascertain and determine the compensation and recompense which shall be made to the respective owners of the lands to be taken shall also " assess the cost of such improvement, or such proportion thereof, as the Board of Estimate and Apportionment directs, upon such parties and persons, lands and tenements as may be deemed to be benefited thereby." It is further provided by section 980 of said charter that " the Board of Estimate and Apportionment may in any case determine whether any and, if any, what proportion of the cost and expense thereof shall be borne and paid by The City of New York, and the remainder of such cost and expense shall be assessed upon the property deemed to be benefited thereby."

The appellant contends that the language of the resolution of the board of street opening and improvement, requesting the counsel to the corporation to take the necessary proceedings to acquire title to the lands required for opening and

extending Van Cortlandt avenue, excepts the lands previously acquired by the city. The lands in question were never acquired specially for street purposes. The language of the resolution had special reference to the opening and extension of Van Cortlandt avenue and to property required for the purpose of such opening and extension. It was clearly so construed by the court in granting the order appointing the commissioners of estimate and assessment. No motion has ever been made to vacate or modify that order. (*Matter of Grand Boulevard*, 33 App. Div. 210.) The resolution should be construed not only with reference to the purpose for which it was desired that the property should be acquired, but also with reference to the provisions of section 995 of said charter, and as so construed we are of the opinion that it was not the intention of the board of street opening and improvement, by their resolution, to except from the lands to be acquired that part thereof that had already been acquired by the city for the purposes of the water supply.

Section 995 of the city charter provides:

"§ 995. If any lands, tenements, hereditaments or premises belonging to The City of New York, or wherein it may be interested, shall be required for any of the purposes aforesaid, or shall be benefited by any such operation and improvement as hereinbefore mentioned, the city shall be entitled to compensation and recompense for the loss and damage it may sustain, and shall be bound to allow and pay for the benefit and advantage it may be deemed to acquire thereby, in like manner as other owners and proprietors of lands and premises required for the purpose of making the said operation and improvement, or deemed to be benefited thereby; and it shall be lawful for the said commissioners of estimate and assessment, and they are hereby directed in such, each and every case, to estimate and assess upon the principals, and in the manner herein aforesaid; and to report the sum or sums which, in their opinion, ought to be allowed and paid to or by the city for the said loss and damage, or for the said benefit or advantage, as the case may be, to the city, by and in con-

sequence of said operation and improvements of opening the said street or park, or section thereof so to be opened, or laying out, or forming, or extending, enlarging or otherwise improving the same, so to be laid out and formed, or extended, enlarged or otherwise improved, as the case may be.    It shall not, however, be lawful to lay-or impose any assessment whatever on any public park, square, or place, or street, road or avenue, but all such assessments which may be properly payable by the city shall be assessed against it in a gross sum in each and every such proceeding."

Persons owning real property abutting upon other real property owned by a municipality do not have easements in or over the municipal property simply because the property is owned by a municipality and not by an individual.   Real property acquired by a municipality for general corporate purposes, and not for street or other special purposes, is held pursuant to the deeds of conveyance the same as individuals hold real property.   The abutting owners upon the lands in question prior to this proceeding did not have any right of access over the same, or right to protect the free circulation of light and air to their property.   The maintenance of a public street secures to abutting owners certain rights and easements which constitute benefits to such abutting owners. When lands are acquired by a municipality and paid for by special assessment, there is an implied contract that the benefits derived by the payment of such assessment shall be protected.   This court, in speaking of the rights of owners of land abutting upon a public street, say, in *Lahr* v. *Metropolitan El. R. Co.* (104 N. Y. 268):

" An abutting owner necessarily enjoys certain advantages from the existence of an open street adjoining his property, which belong to him by reason of its location, and are not enjoyed by the general public, such as the right of free access to his premises, and the free admission and circulation of light and air to, and through his property.   These rights are not only valuable to him for sanitary purposes, but are indispensable to the proper and beneficial enjoyment of his property,

and are legitimate subjects of estimate by the public authorities, in raising the fund necessary to defray the cost of constructing the street. He is, therefore, compelled to pay for them at their full value, and if in the next instant they may by legislative authority be taken away and diverted to inconsistent uses, a system has been inaugurated which resembles more nearly legalized robbery than any other form of acquiring property.

"Although it may be assumed that the municipality by proceedings, to open a street, acquires the fee to the land taken, it is yet a qualified fee, held in trust under the statute for a certain use, and that use cannot be departed from without violating an essential condition of the contract under which the land was obtained."

It is by reason of such benefits that it is provided in the charter of the city of New York and other city charters that the costs and expense of laying out a public street shall be assessed in whole or in part upon the lands so to be benefited. If real property can be acquired for general corporate purposes and paid for by general tax, and then devoted to street purposes where abutting lands will be benefited to an extent equal to the cost of acquiring such lands, it would result in a benefit to such abutting owners at the expense of the general taxpayer. Section 995 of said city charter was enacted for the express purpose of adjusting the rights and equities as between such abutting owners and the general taxpayer. It is suggested that as the pipe line is wholly beneath the surface of the ground that the city will not be injured by using the surface of the land for street purposes. It is not true, in fact, that the city is not damaged. Even if the pipe line as now constructed is not disturbed by the laying out and maintenance of a street, it does not appear that it may not be necessary to change the pipe line, or that the surface of the soil may not hereafter be required for the purposes mentioned in the act of 1877.

Where the absolute and unqualified title to land is owned by a municipality it may be used for any of the purposes of such municipality. (*Whitney* v. *State of N. Y.*, 96 N. Y.

240; *Eldridge* v. *City of Binghamton*, 120 id. 309.) So far as the city of New York is concerned, it could undoubtedly have devoted this land to street purposes. As the city owned the property in question in fee simple absolute it could have erected thereon a public building, maintained thereon a public park or street, or, if the property was not required for the purposes of the water supply, it could have been sold and the proceeds of the sale applied to the general purposes of the corporation and to the advantage of the general taxpayer. As we have seen, however, when such property is dedicated to the use of the public as a street it is inconsistent with the absolute fee. (*Matter of Ninth Ave. and Fifteenth St.*, 45 N. Y. 729.) The general taxpayer, by such dedication, has suffered a damage, and the abutting owners have acquired an advantage. This proceeding, so far as the city is concerned as an owner in fee of the lands in question, results in a dedication of such lands to street purposes, and the lands in question were included in this proceeding in obedience to section 995 of the city charter, not for the purpose of condemning for its own use lands already owned by the city, but as a means established by legislative authority in connection with acquiring the title to lands for street purposes to determine what compensation and recompense for the loss and damage to the city at large should be made to the city, and what persons or property specially benefited thereby should pay the same. The statute is necessary and proper for the purpose of doing justice to the general taxpayer as against the persons specially benefited by dedicating the property to street purposes, and, in the language of the statute, the appellant and others should pay for the loss and damage to the city "in like manner as other owners and proprietors of lands and premises required for the purpose of making the said operation and improvement."

No other question is presented by this appeal. The order should be affirmed, with costs.

CULLEN, Ch. J., EDWARD T. BARTLETT, HAIGHT, VANN and WERNER, JJ., concur; WILLARD BARTLETT, J., dissents.

Order affirmed.