I, therefore, advise that this conviction for disorderly conduct be affirmed.

Mills, Rich, Blackmar and Kelly, JJ., concur.

Judgment of conviction of the County Court of Westchester county affirmed.

---

In the Matter of the Application of The City of New York, Appellant, Relative to Acquiring Title, etc., for the Purpose of Opening and Extending Ashland Place, from Fulton Street to Flatbush Avenue, in the Eleventh Ward, Borough of Brooklyn, City of New York.

Realty Associates and Others, Respondents.

Second Department, April 15, 1921.

Municipal corporations — eminent domain — property of city of New York taken for street purposes — damages — order appointing commissioners stating that city was not to have substantial damages nullified by later order — city entitled to compensation where its property is taken for street purposes — Greater New York charter, § 995, applied.

Where, in proceedings to acquire property for street purposes which the city of New York held in fee absolute, the order granting the application for the appointment of commissioners of estimate and a commissioner of assessment contained a condition that the city would assert no claim for damages, said condition was nullified, where subsequently, upon reargument at the request of the city on the ground that the city intended to claim substantial damages, the application was granted unconditionally and the court made, in the usual unconditioned form, the appropriate order appointing the commissioners from which an appeal was not taken.

It was within the fair discretion of the commissioners to adopt the final lowest estimate of the city's expert as to the amount of damage that the city would suffer by the taking of said property for street uses.

The question as to the right of the city to receive compensation for the property which had been previously taken in its behalf by the Public Service Commission for a subway cannot now be raised, since no appeal was taken from the order appointing the commissioners.

Moreover, by virtue of section 995 of the Greater New York charter where any lands of the city shall be required for any of the purposes recited, which include a street user, the city is entitled to be compensated the same as any other owner or proprietor of land under like circumstances. JENKS, P. J., and RICH, J., dissent, with opinion.

APPEAL by the petitioner, The City of New York, from an order of the Supreme Court, made at the Kings Special Term and entered in the office of the clerk of the county of Kings on the 7th day of October, 1919, denying the petitioner's motion to confirm the supplemental and amended report of the commissioners herein and referring the matter as to damage parcel No. 1-A to new commissioners for consideration and report.

*Patrick S. MacDwyer* [*John P. O'Brien, Corporation Counsel*, with him on the brief], for the appellant.

*Edwin L. Snedeker*, for the respondent Realty Associates.

*Herbert G. Andrews*, for the respondents Voorhees and others.

MILLS, J.:

This matter has had a long and interesting history. The premises affected constitute a strip of land, twenty-five feet wide on the westerly side of Ashland place, extending from Fulton street on the north to Hanson place on the south in the borough of Brooklyn, the same being taken so as to widen Ashland place from fifty feet to seventy-five feet. Prior to · the institution of this proceeding the Public Service Commission had, by appropriate proceedings, acquired title to the premises for the purpose of constructing a subway beneath them as a part of the city's system of rapid transit, said title vesting in the city for that purpose on November 28, 1910. The strip so taken constituted the front portions of several lots abutting on Ashland place on its west side, and also of two lots fronting on the southerly side of Fulton street, the former being in that proceeding designated as parcels Nos. 1–32, and the latter as parcels Nos. 33 and 34. Parcels Nos. 1–33 were so taken in fee, but subject to certain easements in favor of the balance of the lots from which they were so taken. Those easements were in substance the perpetual right to light, air and access, " subject, however, in the event that the said

parcels of land shall at any time be lawfully made a portion of Ashland Place or otherwise used for the purposes of a public street, to such reasonable uses and such reasonable rules and regulations established in pursuance of law by the proper public authorities as would be lawful and proper if said parcels of land had been originally acquired in fee by the City of New York in trust for the purposes of a public street," while parcel No. 34, being the corner at the intersection of Fulton street and Ashland place, was so taken in fee absolute without any easement reservation. Thereafter, on June 1, 1911, the board of estimate and apportionment instituted proper proceedings to widen Ashland place as above stated. On January 8, 1915, that board passed the appropriate resolution for acquiring title to that strip, viz., " a title in fee in trust for street purposes in such premises, subject to the right of The City of New York to construct, maintain and operate a subway for rapid transit purposes under said premises." Under authority of the resolutions of that board, the city's law department made due application to this court at the Kings Special Term before Mr. Justice KELLY for the appointment of commissioners of estimate and a commissioner of assessment in that matter. That application was opposed by certain property owners, including the respondent Voorhees, upon the ground that the city's then present title was sufficient to warrant the designed street user and that, therefore, no further condemnation was needed. Mr. Justice KELLY granted the application with a memorandum which contained this statement, viz.: " The order to contain recital that the city will assert no claim for damages; that the matter be heard and finally determined by the commissioners in not more than three sessions; " but before the order was made the city moved for a reargument upon affidavits showing that it did purpose to claim a substantial damage award for the parcel at the corner of Fulton street and Ashland place, which the city held in fee absolute. Upon that reargument the court granted the application unconditionally, and made in the usual unconditioned form the appropriate order appointing the commissioners; and from that order no appeal was taken. Upon the hearings before the commissioners the city claimed substantial damage only for the taking of damage parcel No. 1-A,

which is the said corner and a part of said parcel No. 34 in the said prior proceeding. As to the other parcels, namely, the twenty-five feet frontage of the other lots, the city considered that it was entitled only to nominal damages. The only evidence as to damages was presented by the city, and consisted of the testimony of a Mr. Hovenden, a real estate expert, who testified twice. Upon the first occasion he said, in substance, that he had been advised that the part of said parcel No. 34 which constituted said damage parcel No. 1-A, being directly over the subway, could not be used to sustain a building except at an extra cost of $60,000 for special foundations, and that in view of that cost it was of no value; but still he expressed his own opinion that such use could be made of it to a substantial extent without such special construction. Thereafter the city's engineer, upon whose reported judgment the estimate of said extra cost of $60,000 had been made by the expert, was called and examined, and he finally reduced his estimate of that cost from $60,000 to $7,000, that is, as to a one-story structure over the said damage parcel. Thereafter Mr. Hovenden was recalled, and upon the basis of that reduction in cost he gave as his final estimate that the value of said damage parcel was $13,200; but he stated that if it could not be used to sustain a one-story building it would be worth $3,500 for use for advertising purposes. The commissioners, upon the basis of that testimony and upon their personal view, awarded to the city $3,500 for that damage parcel and sustained such award against objections filed by the respondents upon the ground of excessiveness and others filed by the city upon the ground of inadequacy, and made their final report accordingly. The motion for confirmation was made at the Kings Special Term before Mr. Justice CROPSEY. He filed two memoranda of decision. In the second he held that in view of Mr. Justice KELLY's memorandum above recited it was apparent that the order appointing commissioners had been made upon the understanding that no award for damage should be made to the city, viz.: " Common fairness and ordinary justice required that no award should be made to the city for any property taken, or at least that no assessment should be levied against the other property owners to pay for an award thus made in

violation of the understanding had and of the direction of the justice." An order was thereupon made and entered accordingly, remitting the matter as to said damage parcel to the commissioners for further consideration and report. Upon the rehearing by the commissioners, the city simply rested upon the evidence already introduced, and the other parties put in no proof. The commissioners upon reconsideration adhered to their former conclusion, and made a supplemental and amended report accordingly, to which over objection they remained constant in their final report. The motion to confirm that report was, by the sitting justice, referred to Mr. Justice Cropsey, who also, in his turn, adhered to his former view and conclusion; and in the order appealed from he substantially repeated his former order, except that he appointed an entirely new set of commissioners. Thereupon the city authorities appealed here.

In the first place it is perfectly manifest that Mr. Justice Cropsey misapprehended the status of the final disposition of the matter by Mr. Justice Kelly. The former's memorandum in deciding each motion for confirmation indicates clearly that he assumed or supposed that the latter made his order upon the practical stipulation of the city to claim only a nominal award for said damage parcel; whereas, while the latter (Mr. Justice Kelly) did in his first memorandum make substantially that statement, yet after the reargument, had simply because of that statement, he made his order absolute without any such condition or even recital.

Upon the merits I perceive no reason why it was not within the fair discretion of the commissioners to adopt, as they evidently did, the final lowest estimate of the city's expert, and so award to the city $3,500 for said damage parcel.

The respondents further contend here that the original order made by Mr. Justice Kelly was unauthorized, inasmuch as the city had already, under the prior proceeding taken in its behalf by the Public Service Commission for the subway, the full right to use the surface of the strip for a public street. I do not appreciate how the respondents can now raise that question. They did not appeal from that order made by Mr. Justice Kelly, and they have not appealed from the last order made by Mr. Justice Cropsey. Possibly at the

hearing before the latter they might have moved to dismiss the entire proceeding upon that ground, and upon his denying that motion have appealed here from the order which he made, but they did not take that course.  However that may be, I conclude that they are mistaken upon the merits of the question. Section 995 of the Greater New York charter (Laws of 1901, chap. 466, as amd. by Laws of 1906, chap. 658)* provides expressly in effect that where any lands of the city or wherein it may be interested shall be required for any of the purposes recited, which include a street user, the city shall be entitled to be compensated the same as any other owner or proprietor of land under like circumstances.  In *Matter of Mayor, etc., of New York* (186 N. Y. 237) that section was construed so as to fully sustain the city's position here.

I advise, therefore, that the order appealed from be reversed, with ten dollars costs and disbursements, and that the motion to confirm the supplemental and amended report be in all respects granted.

BLACKMAR and JAYCOX, JJ., concur; JENKS, P. J., reads for affirmance, with whom RICH, J., concurs.

JENKS, P. J. (dissenting):

I vote to affirm.  Commissioners should carry out the directions of the order or mandate under which they act, and when a proceeding is remitted for correction the directions of the order of remission must be observed, that the result may be exhibited to the court and to the parties.

If such an order is vulnerable it may be reviewed.  But the city did not appeal from the order of January 24, 1917. It proceeded before the commissioners and without offer of further proof it procured a report that in effect set at naught the directions of the court.  On this ground alone, the order appealed from should be affirmed.

Further, when land like this corner lot was acquired in fee by the city (and full value paid), and not dedicated to any specific use, there was neither statutory nor legal obstacle to prevent the city from use of the surface for another pur-

---

* Since repealed by Laws of 1915, chap. 606, §§ 1, 3.  Now Greater New York Charter, § 978, as added by Laws of 1915, chap. 606.— [REP.

pose not inconsistent with use for the subway. In *Brooklyn Park Comrs.* v. *Armstrong* (45 N. Y. 234, 243) it is said that when property is taken by the public for a particular use, if that use ceases the right may cease also, but that it is otherwise when the whole property is taken and full value is paid.

I agree, however, with the learned Special Term that the commissioners' finding of the value of this lot is against the greater weight of evidence, as it is plain that when the subway was constructed it was never designed that any building should be erected within the parcel described as lot No. 1-A. Besides and beyond the interest of these lot owners is the interest of public safety. Such a hypothetical structure from its weight or contents or other cause, might endanger the subway itself, and so in good conscience and fairness the city should not assess the other lot owners for its loss of an imaginary one-story structure that might be superimposed on the subway traffic.

RICH, J., concurs.

Order reversed, with ten dollars costs and disbursements, and motion to confirm the supplemental and amended report in all respects granted.