THE CITY OF NEW YORK, Appellant, *v.* THE DELAWARE, LACKA-- WANNA AND WESTERN RAILROAD COMPANY and Another, Respondents, Impleaded with UNITED AMERICAN LINES, INC., Defendant.

First Department, July 6, 1923.

Municipal corporations — action by city of New York in ejectment to recover land under water occupied by pier No. 7 and also pier and structures thereon — defendant's predecessor was owner of rights of wharfage, etc., in perpetuity appurtenant to bulkhead and to piers extending outside from bulkhead — for purpose of improving dockage facilities, plaintiff, through commissioner of docks, entered into agreement with defendant's predecessor — defendant's predecessor surrendered rights in old bulkhead and to land between old and new bulkheads and erected new pier — city granted defendant's predecessor wharfage etc., appurtenant to new bulkhead — this action was commenced eighteen years after agreement was executed — city does not offer to reimburse defendant — defendant's predecessor upon execution and performance of contract became owner of property under water — agreement not ultra vires as in contravention of Greater New York charter, § 71, providing that land under water shall not be alienated — agreement was authorized by Greater New York charter, §§ 822, 876 — costs — defendant's attorneys entitled to additional allowance.

In an action in ejectment by the city of New York to recover possession of certain real property consisting of lands under water and now occupied by pier No. 7, North river, between Rector and Morris streets, and also the pier erected thereon together with shed and structures on said pier, it appeared that the defendant's predecessor in title was in 1903 the owner of all the rights of wharfage, cranage, advantages, etc., appurtenant to the bulkhead then extending along the former west side of West street; that he had the right to maintain piers thereon in perpetuity; that in 1903 the city of New York, for the purpose of improving dockage facilities, prepared a comprehensive plan for the improvement which included extending the bulkhead line farther west; that the plaintiff, through its dock commissioner with the approval of the commissioners of the sinking fund entered into an agreement with the defendant's predecessor in title whereby the latter surrendered to the city all his rights to the bulkhead upon the westerly line of West street and in the lands and structures lying between the old bulkhead line and the line of a new bulkhead to be erected in accordance with said improvement plan, and in return therefor and for expenditures required in making improvements, the city granted to him permission to build a new bulkhead and to erect a new pier, and granted wharfage and rights incidental thereto appurtenant to the new bulkhead; that the defendant's predecessor in title carried out the agreement by filling in between the old and new bulkheads and by erecting a pier in conformity with the agreement, all at his own expense; and that this action was not commenced until after the lapse of eighteen years during which time the city never questioned the validity of the title of the defendant's predecessor or of the defendant, and does not now make any restitution or offer to reimburse the defendant or his predecessor in title for the money so expended, but insists that the contract is *ultra vires* and void.

*Held*, that the agreement between the plaintiff and the defendant's predecessor is not *ultra vires* on the ground that it is in contravention of the provisions of section 71 of the Greater New York charter, which provides that the rights of the city in and to land under water shall not be alienated.

Said agreement is authorized by the provisions of sections 822 and 876 of the Greater New York charter which grant to the commissioner of docks with the approval of the commissioners of the sinking fund power to agree, license and permit the private owners of any bulkhead, piers or water rights to make the necessary improvements upon their bulkheads, piers or water rights, so as to conform to the plan heretofore mentioned.

The Legislature in enacting said sections 822 and 876 intended to except from the provisions of section 71 the provision forbidding the city to alienate its wharf property and land under water whenever it entered into an agreement of the nature specified in section 822 and it must be held that the provisions of section 822 prevail over the general inhibition of section 71 particularly when taken in connection with the ample authority vested in the city under section 876 to grant land under water between the bulkhead and pierhead lines.

Furthermore, the practical construction of section 822 by all parties to said agreement leads to the conclusion that the parties understood that the city had the power to make the grant.

The equities of this case are all with the defendant, for the agreement between the defendant's predecessor and the city was entered into in good faith by both parties, was carried out by the defendant's predecessor at great expense and the result was to effectuate and carry out an important plan for the improvement of dockage facilities, and even though the transaction may have proven profitable to the defendant or its predecessor, such fact furnishes no ground for repudiation by the city of its solemn and legally justified act.

The court properly awarded to the defendant an extra allowance of $2,000 inasmuch as the case was a difficult one involving the examination of a large number of statutes and a vast amount of documentary evidence.

APPEAL by the plaintiff, The City of New York, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 25th day of May, 1922, upon the verdict of the jury rendered by direction of the court, and also from an order entered in said clerk's office on the 24th day of April, 1922, granting the defendant, the Delaware, Lackawanna and Western Railroad Company, an additional allowance.

*George P. Nicholson*, Corporation Counsel [*Charles J. Nehrbas* of counsel; *Josiah A. Stover* with him on the brief], for the appellant.

*W. S. Jenney* and *J. L. Seager* [*Austin J. McMahon* of counsel; *Charles D. Olendorf* with him on the brief], for the respondent Delaware, Lackawanna and Western Railroad Company.

*Cravath, Henderson, Leffingwell & de Gersdorff* [*Lyle H. Hall* of counsel], for the respondent Baltimore and Ohio Railroad Company.

MERRELL, J.:

The action is brought in ejectment to recover possession of certain real property consisting of lands under water and now occupied by pier No. 7, North river, between Rector and Morris streets, and also the pier erected thereon, now known as pier new No. 7, North river, together with the shed and structures on said pier. The lands of which the plaintiff claims possession are approximately 100 feet in width and extending from the present bulkhead line at the westerly line of West street in the borough of Manhattan, New York city, into the North river, a distance of approximately 655.55 feet. This pier is a modern structure erected upon piles, decked over, and is entirely covered by a steel shed. At the time of the commencement of this action the premises in suit were occupied by the defendants Baltimore and Ohio Railroad Company and the United American Lines, Inc., under lease thereof from the present owner, the Delaware, Lackawanna and Western Railroad Company.

On December 4, 1903, one Howard Carroll was the owner of all the rights of wharfage, cranage, advantages, emoluments and hereditaments appurtenant to the bulkhead then extending along the former westerly side of West street seventy feet west of the east line of said street, and extending from a point 31 feet south of Rector street southerly to a point 298 feet three inches. Carroll was at that time also the owner of two piers known as shedded piers old Nos. 6 and 7, which piers extended out from his said bulkhead. He also had the right to maintain said piers and the sheds erected thereon in perpetuity, and owned all the rights of wharfage, cranage, advantages, emoluments and hereditaments appurtenant thereto. The above stated facts of ownership of Carroll in said bulkhead and piers are conceded and stipulated by the parties to this action. At the time when Carroll purchased the said premises, the erections thereon, being piers old Nos. 6 and 7, with the bulkhead and sheds, were obsolete and out of repair; and the city in furtherance of a plan theretofore adopted, desired to have the premises and facilities for dockage in connection therewith improved. The city through its dock department had theretofore adopted a comprehensive plan for the improvement of its piers and dockage facilities. As a part of such plan, the rebuilding and improvement of the dockage facilities and piers between Rector and Morris streets was included. The city through its dock department prepared a detail map and plan of such general dockage improvements, which plan was approved October 16, 1903. Very soon after Carroll became the owner of the premises in suit, negotiations were entered into for the improve-

ment of the piers and bulkhead thereon in accordance with said plan of the dock department; and on December 4, 1903, an agreement was entered into between the commissioner of docks, of the first part, and Howard Carroll, of the second part, and Caroline S. Carroll, of the third part, whereby Carroll surrendered to the city all his rights to the old bulkhead upon the westerly line of West street, and in the lands and structures lying between the old bulkhead line and the line of a new bulkhead to be erected in accordance with said improvement plan which had been adopted, being an area of 180 feet east and west by 298 feet three inches north and south, together with substantial parts of piers old No. 6 and 7; and whereby Carroll, at his own cost and expense, was to fill in and extend West street from the old bulkhead line to the new bulkhead line, was to erect a new bulkhead and seawall, together with a shed thereon 50 feet by 298 feet three inches, was to remove piers old Nos. 6 and 7, and build pier new No. 7 in place thereof. In return for the property and rights which he thus relinquished, destroyed and removed, and for expenditures required in making said improvements, aggregating over $400,000, the city granted Carroll permission to build the new bulkhead and seawall and to erect the new pier No. 7 together with sheds thereon. All of this work was to be done by Carroll at his own cost and expense, and in return he was to have a grant of wharfage and rights incidental thereto, appurtenant to the new bulkhead and new pier No. 7. The agreement entered into between the city and the Carrolls on December 4, 1903, was fully performed by Carroll to the satisfaction of the city. As a matter of fact, the work incidental to the improvement was in the first instance performed by the city through its dock department, Carroll ultimately reimbursing the city for all expense and labor in connection therewith. In 1908 Carroll conveyed his interest in the premises, consisting of the new bulkhead, shed and new covered pier, to the defendant the Delaware, Lackawanna and Western Railroad Company. The last-mentioned company took possession and has continued in the ownership and possession thereof, save as leased to the defendants Baltimore and Ohio Railroad Company and United American Lines, Inc., until the commencement of the present action.

After the lapse of eighteen years, during which time the city never questioned the validity of the title of either Carroll or his grantee to the premises, the city, without making any restitution of the valuable property which it received in exchange for the lands under water which it conveyed to Carroll in excess of that of which he then had title, without offering to make reimbursement for the

great expense incurred in making said improvement, now seeks to regain possession of the lands then granted, upon the ground that the conveyance to Carroll under the agreement of December 4, 1903, was *ultra vires* and, therefore, void, and that thereunder Carroll and his grantee acquired no rights. In the complaint, which is in the usual form in ejectment, the plaintiff alleges ownership and right of possession in the lands in question, together with the improvements and structures thereon, and demands damages in the sum of $115,000 for withholding from the plaintiff the said premises for six years prior to the commencement of the action.

The defendant, Delaware, Lackawanna & Western Railroad Company, in its answer denies ownership, title or right of possession in the plaintiff, and alleges title in itself to the property in suit. The property owned by Carroll consisted not only of pier old No. 6, upon which the new pier is superimposed, but also of pier old No. 7, extending from the old bulkhead into the North river to the north of pier old No. 6. Pier old No. 7, as a part of said improvement, was entirely eliminated and removed. The answer further alleges, in support of said defendant's title, ownership and right to possession, that on December 4, 1903, Howard Carroll had title to piers old Nos. 6 and 7, and the sheds and structures thereon, and the lands under water upon which said piers were constructed, together with the sheds and structures on the old bulkhead; that Carroll then had the right in perpetuity to the wharfage, cranage, advantages and emoluments arising from and accruing and appurtenant to said piers; and that he had the right in perpetuity to the wharfage, cranage, advantages and emoluments arising from, and accruing and appurtenant to, the bulkhead then existing on West street, and from which said piers extended into the North river. The said defendant also alleges in its answer the agreement between the city of New York and Carroll, executed December 4, 1903, under which Carroll acquired the right to construct the new bulkhead and seawall and the new pier, and to erect thereon sheds covering said pier and new bulkhead; and that he then acquired the wharfage, cranage, advantages and emoluments arising from, and accruing and appurtenant to, the new bulkhead and new pier No. 7. The defendant further alleges full performance of said agreement on the part of Carroll, and that thereby he became possessed in perpetuity of the rights with reference to the new bulkhead and pier, wharfage, cranage and other emoluments appurtenant thereto, and to the sheds erected thereon, and to the land under water upon which pier new No. 7 was erected, as he had in and to the former bulkhead and former piers old Nos. 6 and 7, with their sheds and the land

under water upon which the old piers were erected. The defendant Delaware, Lackawanna and Western Railroad Company further alleges the conveyance of all of said rights by Carroll to said defendant. The defendant also alleges that there is an equitable estoppel against the city in that, having induced Carroll to enter into and perform said agreement and to expend upwards of $400,000 upon the said premises upon the faith of said agreement, and having placed it beyond the power of the city to restore Carroll to his former position, the city may not now repudiate its said agreement, even if the same was *ultra vires.* Defendant also alleges that the city is guilty of laches in seeking repossession of the property in suit.

It seems to me that, in equity and in justice and under well-settled principles of law, Carroll became the owner and entitled to the possession of the premises in suit upon the execution and performance of the agreement entered into between the city of New York and himself and wife on December 4, 1903; and that the defendant Delaware, Lackawanna and Western Railroad Company is, and ever since it acquired title thereto from said Carroll has been, entitled to the possession of said premises; and that the city has forfeited all right and claim thereto. Concededly on December 4, 1903, at the time of the execution of said agreement between the city and himself, Carroll was the lawful owner and proprietor of all rights of wharfage, cranage, emoluments and hereditaments appurtenant to the bulkhead as it then existed on West street between Rector and Morris streets; and he was the lawful owner of piers old Nos. 6 and 7 in the North river, extending into said river from said bulkhead; and he then owned exclusively all rights of wharfage, cranage and other rights appurtenant to said bulkhead and piers. The rights of Carroll in the premises and to the use thereof were in perpetuity. Carroll's rights in the premises came in an unbroken chain of title from the time when said piers and bulkhead were originally erected. The right to construct said piers and to maintain and use them in perpetuity came directly from the State of New York through the agency of the city, and did not proceed by gift or otherwise from the city. Unquestionably the common council had power to permit, direct and control the erection of piers on land under water owned by the city or the State. Such power was first conferred upon the mayor, aldermen and commonalty of the city of New York by chapter 80 of the Laws of 1798. Sections 1 to 4 of said act authorized the city to lay out streets or wharves at the expense of the upland owners. Section 5 of said act provided for building piers. Carroll's right to maintain in perpetuity said piers old Nos. 6 and 7, and his perpetual right to receive the wharfage,

cranage and emoluments accruing therefrom, have been well settled by the decisions of the courts, the leading case being *Bedlow* v. *Stillwell* (158 N. Y. 292). (See, also, *Bell* v. *City of New York*, 77 App. Div. 437; *Burns Bros.* v. *City of New York*, 178 id. 615; affd., 232 N. Y. 523; *Wetmore* v. *Atlantic White Lead Co.*, 37 Barb. 70; *Wetmore* v. *Brooklyn Gas Light Co.*, 42 N. Y. 384.)

The appellant attacks the agreement of · December 4, 1903, between the city of New York and Carroll, defendant's predecessor in title, upon the ground that it is *ultra vires* and in contravention of the provisions of section 71 of the Greater New York charter. Section 71 reads as follows: " The rights of the city in and to its water front, ferries, wharf property, land under water, public landings, wharves, docks, streets, avenues, parks, and all other public places are hereby declared to be inalienable." (Laws of 1901, chap. 466, § 71.) I do not think the agreement between the city and Carroll contravenes the charter provision above quoted, when read in connection with other charter provisions hereinafter mentioned. I am of the opinion that the agreement of December 4, 1903, was in all respects valid and binding upon the parties.

As before stated, pursuant to the terms of said agreement, pier new No. 7 and the shed thereon were erected at the expense of Howard Carroll. In entering into the aforesaid agreement with Carroll the city acted through its commissioner of docks and with the approval of the commissioners of the sinking fund. The agreement was also approved by the corporation counsel for the city of New York. The agreement recites that Carroll " is the owner and proprietor of all rights of wharfage and cranage, advantages, emoluments, hereditaments, appurtenant " to the then existing bulkhead on West street. The agreement further recites that " the Commissioner of Docks is desirous of having the above described property improved in accordance with the plan heretofore adopted by the Department of Docks and Ferries and approved by the Commissioners of the Sinking Fund, and the said party of the second part is willing to have the said work done at his expense in consideration of the rights and privileges hereinafter given him." In said agreement the city gave license and permission to Carroll to extend the line of the old bulkhead into the river, and build a seawall upon a line 250 feet westerly from the easterly line of West street, and to fill with solid filling behind said new bulkhead or seawall, the work to be done in accordance with the new plan adopted by the dock department at the cost and expense of said Carroll. Carroll agreed that the work, labor and materials therefor in the first instance should be done and furnished by the department of docks and ferries, he to reimburse said department for such

expenditure. In and by said agreement the city also gave to Carroll license and authority to remove, and said Carroll agreed to remove at his own cost and expense, piers old Nos. 6 and 7 in the North river as they then existed and were owned by him. The city gave full license and permission to Carroll " to construct Pier New 7 at his own expense, between Rector and Morris Streets, North River," as shown and in accordance with the plan for the alteration and amendment of that portion of the plan for improvement of the water front, as adopted by the board of docks April 13, 1871, and in accordance with the plan made by and adopted by the commissioner of docks September 17, 1903, and approved by the commissioners of the sinking fund October 16, 1903. All work of construction of said pier, by the terms of said agreement, was to be under the direction and supervision of the department of docks and ferries. The city further gave and granted to Carroll license and permission to erect at his own expense a shed on pier new No. 7, and to construct upon the new bulkhead a shed extending from the face of said bulkhead inshore a distance of fifty feet. The city further covenanted and agreed in said agreement of December 4, 1903, that, when completed, the same should be set aside for the purpose of steam transportation and for such other lawful purposes as the city might deem proper under and by virtue of the terms of the original grant of the property belonging to said Carroll. The agreement provided at length as follows: " And the said party of the second part [Carroll] for and in consideration of such licenses and permissions hereinbefore set forth and for and in consideration of the wharf property hereinafter conveyed to him by the said party of the first part [the city], hereby relinquishes to the said party of the first part all the rights of wharfage, cranage, emoluments and hereditaments appurtenant to all that bulkhead on the Westerly side of West street as hereinbefore described and appurtenant to Piers Old Nos. 6 and 7 North River as the said bulk head and piers existed at the date of this agreement.   *   *   *   To have and to hold the said hereinbefore described wharf property unto the said party of the first part to its own use and behoof forever. And the said party hereto of the first part [city] for and in consideration of the wharf property hereinabove conveyed by the said party of the second part [Carroll] and for and as a reimbursement for the cost and expense of the improvements to be made by him at his own cost and expense, hereby grants, bargains, sells, aliens, remises, conveys, releases and confirms and by these presents has granted, bargained, sold, aliened, remised, released and confirmed unto the said party of the second part all the rights of

wharfage, cranage, emoluments and hereditaments appurtenant to all that bulk head when completed upon a line 250 feet westerly of the easterly side of West Street, heretofore adopted by the Department of Docks and approved by the Commissioners of the Sinking Fund as the new bulk head line beginning at the point of intersection of a straight line drawn at right angles to the Easterly side of West Street in a westerly direction and distant about 31 feet Southerly from the Southerly side of Rector Street at the Easterly side of West Street with the new bulk head line and running thence Southerly along said new bulk head line 298 feet 3 inches more or less. And also all the rights of wharfage, cranage, emoluments and hereditaments appurtenant to Pier New 7 North River when completed in conformity with the plan heretofore adopted by the Department of Docks and Ferries and approved by the Commissioners of the Sinking Fund. To have and to hold the said wharf property for his own use and behoof forever. And it is further mutually covenanted and agreed by and between the parties hereto that in case the City of New York shall at any time seek to acquire the rights hereinbefore conveyed to the party of the second part by process of law or private agreement according to law, said party hereto of the first part shall pay said owner, the party of the second part, such an amount as may be determined upon in the proceedings for the acquisition of said rights or may be agreed upon by the said parties hereto of the second part and the Commissioner of Docks with the approval of the Commissioner of the Sinking Fund. to be the value of the rights of wharfage, cranage and other emoluments appurtenant to the new bulkhead constructed by the parties hereto upon the new lines, and of the right and property in and to said Pier New 7 as the same shall be built pursuant to this agreement. And' it is further mutually covenanted and agreed by and between the parties hereto that the terms, conditions and covenants herein contained on the part of the party hereto of the first part shall be binding upon it, its successors and assigns and that the terms, conditions and covenants contained on the part of the party of the second part shall be binding upon him and his heirs, administrators and assigns."

That the said agreement was authorized by the provisions of section 822 of the Greater New York charter seems to me reasonably clear. So far as material section 822 provides as follows: " Provided that said commissioner of docks, with the approval of the commissioners of the sinking fund, hereby is empowered to agree, license and permit private owners of any bulkheads, piers or water rights, to make the necessary improvements upon their bulkheads, piers or water rights, so as to conform to the plan

already adopted by the department of docks, and approved by the commissioners of the sinking fund of The City of New York, as heretofore known and bounded, or to be hereafter adopted and approved, pursuant to this chapter, during the period which shall intervene prior to the extinguishment of such private ownerships by The City of New York, such improvements to be made by such owners under the supervision of or by the commissioner of docks, as may be agreed upon, at the cost and expense of such private owners, in the first instance, and upon such reasonable terms as to reimbursing said private owners for such improvements, and as to wharfage and other riparian rights thereon and therefrom, as may be agreed upon. All agreements, and licenses or permits heretofore made or entered into between the mayor, aldermen and commonalty of the city of New York and any private owners, as to the making of like improvements upon their property, are hereby ratified, confirmed and made valid." (See Laws of 1901, chap. 466, § 822, as amd. by Laws of 1903, chap. 624. Since re-enacted by Laws of 1913, chap. 328, and Laws of 1915, chap. 597, amdg. said section.)

Section 876 of the charter provides as follows: "No grants of land under water shall be made by the board of aldermen of The City of New York, or by any officer, board, or department thereof, beyond the exterior lines of The City of New York, as fixed by an act of the Legislature, passed April seventeenth, eighteen hundred and fifty-seven, entitled 'An act to establish bulkhead and pier lines for the port of New York,' as amended by subsequent act, unless as expressly authorized by acts passed subsequent thereto." (Since re-enacted by Laws of 1910, chap. 269, amdg. said section.)

Reading sections 822 and 876 in connection with section 71, as I think we must, it clearly appears that the Legislature, in enacting sections 822 and 876, intended to except from the operation of section 71 the provision forbidding the city to alienate its wharf property and land under water whenever it should enter into an agreement of the nature specified in section 822. The act of the Legislature referred to in section 876, being chapter 763 of the Laws of 1857, is entitled "An act to establish bulkhead and pier lines for the port of New-York." By section 1 of the act of 1857 the Legislature established the bulkhead and pier lines recommended by the harbor commissioners appointed by the Governor pursuant to chapter 121 of the Laws of 1855, "except that the exterior or pier head line from Ninth street extended to Forty-ninth street, on the New York side of East river, shall be the same as in the line recommended by the committee of commerce and navigation of the

Senate, in their report." By section 2 of said act it was provided that it should not be lawful to extend piers " beyond the *exterior or pier line,* nor beyond, or outside of the said sea wall." The sea wall was that established by section 1 of the act from Ninth street to Forty-ninth street on the New York side of the East river. In *Matter of City of New York* (217 N. Y. 1) the Court of Appeals construed chapter 763 of the Laws of 1857, and held that the first section of the act provided that the bulkhead line or line of solid filling, and the pier line adjacent to the shores of the port of New York, be established as the bulkhead and pier lines as recommended by the harbor commissioners appointed under the act of 1855, *except* that the exterior or pierhead line from Ninth to Forty-ninth streets on the New York side of the East river shall be the line recommended by the committee on commerce and navigation of the Senate. The adoption and approval of a new pierhead line by the amended plan of 1903 established a pierhead line at the date of the agreement between Carroll and the city. (*Appleby* v. *City of New York,* 199 App. Div. 539.) There can be no doubt that all of pier new No. 7 and all of the land under water claimed by the city herein, lay between the established pierhead line of 1903 and the bulkhead line of 1871, and, therefore, on December 4, 1903, the city of New York was lawfully authorized to grant to Carroll the fee of the land under water on which pier new No. 7 stands, inshore or easterly of the exterior or pierhead line then established, and had power to grant to Carroll any interest in said land under water. The prohibition of section 876 of the Greater New York charter against granting land under water *beyond* the exterior or pierhead line established by the act of 1857 and acts amendatory thereto, must be construed as inferentially empowering the city to make grants of land under water extending from the bulkhead out to the established pierhead line.

It seems to me that the provisions of section 822 of the charter, expressly authorizing the commissioner of docks to " agree, license and permit private owners of any bulkheads, piers or water rights " which shall not conform to the plan adopted, and to agree with such owners " as to wharfage and other riparian rights thereon and therefrom," must prevail over the general inhibition of section 71 of the charter, particularly when taken in connection with the ample authority vested in the city under section 876 of the charter to grant land under water between the bulkhead and pierhead lines; and that section 822 of the charter gave to the city full power to transfer to the owner of the old property, as a consideration or compensation for the expense falling upon him and for the relinquishment of valuable rights on his part, the land under water to the

pierhead line established by the act of 1857, together with all rights of wharfage, cranage, emoluments, etc., appurtenant to the improved pier.

Section 822 of the charter authorized the city, by an agreement in the nature of that entered into by the parties, to transfer and set over to Carroll, who was to make the improvement upon his property, such rights of property in the new improvement as those with which he would have been vested had the agreement contained no provision setting over to him such rights of wharfage, cranage, etc. (*Bedlow* v. *Stillwell, supra; Bell* v. *City of New York, supra.*)

The respondents urge with much force that the court should incline toward the rule of such a construction as will work in the present case neither injustice nor hardship to any of the parties before the court. Such rule is well stated in *Hayden* v. *Pierce* (144 N. Y. 512, 516) as follows: " It is a familiar rule that a construction of a statute is to be avoided which is liable to produce a public mischief *or to promote injustice.* Language, however strong, must yield to what appears to be the intention, and that is to be found, not in the words of the particular section alone, but by comparing it with other parts or provisions of the general scheme of which it is a part." (See, also, *Hoey* v. *Gilroy*, 129 N. Y. 132.)

The practical construction of section 822 of the charter of the city of New York given by the parties to said agreement is of importance. The Court of Appeals held in *Matter of City of New York* (217 N. Y. 1) that there was a manifest ambiguity in chapter 763 of the Laws of 1857 relating to harbor lines in front of property between Thirteenth and Seventeenth streets; and as the statute was not clear, it was proper to consider the contemporary and practical construction of the act by the city and the owners of the property affected; and that such practical construction of the statute should be given effect. (*Duryee* v. *Mayor, etc.*, 96 N. Y. 477, 494; *Grimmer* v. *Tenement House Department*, 205 id. 549, 550.) Section 822 of the Greater New York charter (as amd. *supra*), in substantially its present form, so far as here material, was first enacted as chapter 397 of the Laws of 1893 (amdg. Consolidation Act [Laws of 1882, chap. 410], § 715. See Greater New York Charter [Laws of 1897, chap. 378], § 822.)

Other agreements similar to the Carroll agreement have been entered into between the mayor, aldermen and commonalty of the city of New York and private owners. On March 22, 1897, a similar agreement to that involved in the present case was entered into by the mayor, aldermen and commonalty of the city and

Frederick W. Rhinelander and others. This agreement provided for the improvement of pier old 28 on the North river at the foot of Murray street and the adjoining bulkhead, and provided for the construction of a new bulkhead and pier extending therefrom into the river. A similar agreement was entered into between the city of New York and the New Jersey Steamboat Company under date of February 16, 1898, for the improvement of pier old 41 North river and the adjoining bulkhead. Other agreements of the same sort were made, all containing granting clauses as to wharfage, cranage, etc., with reference to the new bulkhead and pier. Said agreement was a practical construction which had uniformly been given to the existing statutes, and particularly to section 822 of the Greater New York charter; and such practical construction, given to the charter provision by the department of docks and commissioners of the sinking fund and the various corporation counsels of the city, should have great weight in upholding the contract at bar. (*City of New York* v. *New York City R. Co.,* 193 N. Y. 543, 549.)

The department of docks of the city of New York was created by sections 30 and 99 of the City Charter of 1870 and, subject to the jurisdiction of the commissioners of the sinking fund, was given the exclusive control of all wharf property belonging to the city and the waters adjacent thereto by section 32 *et seq.* of chapter 383 of the Laws of 1870, and by section 99 of chapter 137 of the Laws of 1870 (City Charter), as amended by chapter 574 of the Laws of 1871. Said department of docks by said statutes was given exclusive charge and control of repairing, building, maintaining, altering, strengthening, leasing and protecting the city wharves, docks and water fronts and the appurtenances thereto. Said department was vested with the exclusive government and regulation of all wharves, piers, bulkheads and structures thereon and the waters adjacent thereto in the city, not owned by the city, and was empowered to determine upon a new plan for the whole or any part of the water front of the city of New York, which plan, when approved by the commissioners of the sinking fund, should constitute the *sole* plan according to which any wharf, pier, bulkhead, basin, dock or slip, or any appurtenant structure or superstructure should thereafter be laid out or constructed within the territory or district embraced in and specified by said plan. Said plan was to be the sole authority for solid filling in the waters surrounding the city, and with reference to the extension of piers into said waters and the erection of bulkheads around the city. It was provided by said statutes that upon the adoption of such new plan, the department of docks should proceed with the construction of wharves,

piers, bulkheads, etc., embraced and shown upon the plan adopted. Through various revisions and amendments these powers were finally enacted into the Greater New York charter, and section 822 of the charter provides for the acquisition of bulkheads, piers, and water rights by the city, and for the improvement in accordance with the city's plans of bulkheads, piers and water rights by private owners. Considering such rights and obligations of the dock department under the statutes, there is little difficulty in harmonizing section 822 of the Greater New York charter with prior section 71 forbidding alienation by the city of its property. ˙Section 822 specifically provides, " such improvements to be made by such owners under the supervision of or by the commissioner of docks, *as may be agreed upon,* at the cost and expense of such private owners, in the first instance, and *upon such reasonable terms as to reimbursing said private owners for such improvements, and as to wharfage and other riparian rights thereon and therefrom, as* may be agreed upon." The statute in question was enacted as a part of the permanent plan to improve the water front and dockage facilities of the city of New York. Proper powers were conferred upon the commissioner of docks. Incidental to the improvement of the obsolete piers in existence at the time of the making of said agreement, the dock department with the consent and approval of the sinking fund commissioners was unquestionably authorized to make the exchange and to grant to Carroll whatever lands were necessary to effect such improvement.

In this case the equities are all with the defendants. The agreement between Carroll and the city was at the time entered into in entire good faith by both parties. The agreement itself was prepared by able corporation counsel representing the city, was approved by the commissioners of the sinking fund, and under it the city acquired valuable property rights without expense to it. Not only that, but it effectuated and carried out an important plan theretofore adopted for the improvement of its docks, piers and water front. The city was at no expense whatever for making said improvements. The only thing that the city surrendered was a small amount of land under water adjacent to the new pier to be erected under the city plan. This land was received by the city by gift from the State for the benefit of the commerce of the port of New York. Carroll agreed with the department of docks at his own expense to make the necessary improvements. The work was done and the expenditure made in the first instance by the city, and the city received full reimbursement therefor from Carroll. It is urged by the city that Carroll and his successor

16

242 New York Oversea Co., Inc., *v.* C., J. & S. A. Trading Co.

First Department, July, 1923. [Vol. 206

in title have received enormous profits as the result of such enterprise. Considering the actual investment, the return has been an exceedingly modest one, probably less than five per cent upon the actual total investment. Even though the transaction may have proven profitable to Carroll and his successors in interest such fact furnishes no ground for repudiation by the city of its solemn and legally justified act.

The plaintiff also seeks to review the order making an extra allowance to the defendant Delaware, Lackawanna and Western Railroad Company of $2,000 for costs. I do not think such allowance was unreasonable. The case was a difficult one, involving the examination of a large number of statutes and a vast amount of documentary evidence. Expert witnesses were required, and a great amount of labor was performed by counsel in the preparation and trial of the case. I think the case is one where the court properly made an additional and extra allowance to reimburse the successful party for the difficulties encountered in this litigation. (See Civ. Prac. Act, §§ 1513, 1514.)

The judgment and order appealed from should be affirmed, with costs to the defendants, respondents, separately against the plaintiff, appellant.

Clarke, P. J., Smith, Finch and Martin, JJ., concur.

Judgment and order affirmed, with costs to the respondents separately appearing and filing briefs.